(120 App. Div. 400)

### GELDERMAN v. CURTIS et al.

(Supreme Court, Appellate Division, First Department. June 28, 1907.)

MUNICIPAL CORPORATIONS—USE OF STREET AS HIGHWAY—NEGLIGENCE—EVIDENCE—SUFFICIENCY.

In an action for the death of plaintiff's intestate, an infant, killed by the alleged negligence of defendants' driver in running him down in the street, the weight of evidence *held* to show that intestate brought the injury on himself, without fault of the driver.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1515.]

Patterson, P. J., and Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by Gustav Gelderman, as administrator, etc., of Josiah W. Golderman, deceased, against Grove D. Curtis and another. From a judgment for plaintiff and an order denying them a new trial, defendants appeal. Judgment and order reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, HOUGHTON, and LAMBERT, JJ.

Frank V. Johnson, for appellants.
Frank M. Hardenbrook, for respondent.

HOUGHTON, J. The action is for the killing of plaintiff's intestate through the carelessness of one of defendants' drivers in running him down upon a public street. The testimony on behalf of the plaintiff, elicited from a boy eight years old at the time of the accident, was that the witness and the deceased, who was about nine years of age, were playing with other boys in the roadway of a public street, and that while the deceased was stooping over, with his back to the approaching vehicle, drawn by one horse and loaded with coal, the driver of which was not looking, because he was asleep or in a drunken stupor, he was knocked down and the horse stepped on his head, crushing his skull, from the effects of which he almost immediately died.

Conceding that the deceased had a right to play in the roadway of the street, and that under the circumstances he was excused from looking for a vehicle approaching from behind, and that the defendants' driver was careless in managing his horse, we think the motion for a new trial should have been granted on the ground that the overwhelming weight of evidence shows that the accident happened in an entirely different manner from that claimed by the plaintiff. The testimony of the defendants' driver, sustained by corroborating circumstan-

ces, was that while driving along the street, having a load of a ton of coal, his horse presumably on a walk, the deceased, playing with other boys, suddenly ran swiftly from the sidewalk into the horse, striking the thill of the wagon, which threw him backward, his head striking on the pavement with great force, and that stopping almost immediately, and before the front wheels of the wagon had touched the boy, the driver got down from his wagon, picked up the boy, carried him into the vestibule of a school building at its janitor's suggestion, and that an ambulance was immediately summoned, and on its arrival the plaintiff was dead. The janitor testified that the boy lay on the pavement between the horse's hind legs and front wheel. The direction of the head he was unable to state. The physician who made the post mortem examination stated that the back of the head of the boy was crushed in, the broken fragments lacerating the brain, showing an injury such as might be inflicted by some blunt instrument or great force, and that there were no marks of violence on the face or other portions of his body. The undertaker testified to the one injury only, except that there was an abrasion of the cheek.

The testimony of these three witnesses called in behalf of the plaintiff shows the extreme improbability of the boy's skull having been fractured by the horse stepping on the back of his head. If the injury had been inflicted in that manner, there would have been some signs of it on the face. Pressure sufficient to crush the skull in the manner described would have pressed the face of the boy against the pavement in such a manner as to show much greater indication of the fact than it did. Manifestly the abrasion of which the undertaker speaks was slight, else the coroner's physician would have discovered it; nor is it probable that a horse on an ordinary walk, in lifting his foot to step, would have inflicted so severe an injury as that from which the boy died. On the other hand, a violent fall, striking the back of the head squarely upon the pavement, might produce the precise injury which caused the death.

Without determining whether upon the facts claimed by plaintiff the defendants' servant was shown negligent and his intestate free from contributory negligence, we are of the opinion that the weight of evidence was that the plaintiff's intestate brought the injury upon himself, without any fault on the part of the defendants' servant.

The judgment and order should be reversed, and a new trial granted, with costs to the appellants to abide the event.

CLARKE and LAMBERT, JJ., concur.

INGRAHAM, J. I dissent. I think the question of the defendants' negligence and the deceased's contributory negligence was for the jury, and that there was evidence to sustain the verdict. The nature of the injury was not such as could have been caused by the deceased falling on the asphalt pavement. It appeared that the skull was crushed in which is entirely consistent with the evidence on behalf of the plaintiff that the injury was caused by the horse's hoofs striking the boy on the skull. It is quite inconsistent, it seems to me, with a

mere fall of the deceased on the asphalt pavement. A blow from the horse's feet had the f. :ce necessary to crush the skull, and corroborates the plaintiff's theory of the accident.

PATTERSON, P. J., concurs.